## Cummiskey's Estate.

*Decedents' estates—Claims for boarding and nursing.*

1. Where a woman of considerable estate who was in the habit of paying her bills regularly, boarded for several years with a former domestic servant, and was nursed by the latter, a claim presented by the latter against the estate of the former for boarding and nursing for three years prior to the death of decedent, will not be allowed, where there is no evidence to warrant a finding that the claimant had not received compensation. In such a case there must be sufficient evidence to overcome the presumption that claimant was paid at stated periods.

2. The wages for domestic service are presumed to be paid at stated periods, and when a claim for such service is presented against a decedent's estate, extending over any great length of time, the burden is upon the claimant to rebut the presumption. It, of course, is a presumption of fact which may be rebutted by competent evidence, but until satisfactory evidence is produced the presumption prevails, and the claim must be disallowed. The same rule is applicable in cases of boarding and nursing under the circumstances disclosed in this case.

Argued March 24, 1909. Appeal, No. 342, Jan. T., 1908, by Maurice E. Cummiskey, Administrator, from decree of O. C. Phila. Co. Jan. T., 1908, No. 509, sustaining exceptions to adjudication in Estate of Laura E. Cummiskey, deceased. Before

MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to adjudication.

*John G. Johnson,* with him *Edmund Randall* and *James A. Flaherty,* for appellant.—This claim is not based upon a contract, but upon a quantum meruit. It needs the citation of no authorities to show with what disfavor our courts view such claims extending over a period of several years and during the lifetime of the decedent, a woman of ample means, quick to ask for bills for services rendered and prompt in paying them. Such claims arise periodically, weekly or monthly, and the law presumes they were paid in the lifetime of the decedent as they became due: Monaghan's Est., 13 Pa. Dist. Rep. 694; Carpenter v. Hays, 153 Pa. 432.

*Michael J. Ryan,* for appellee.—The evidence in this case, which is absolutely uncontradicted, shows that the claim is a just one and that it was properly allowed by the orphans' court. To have disallowed the claim would have been an injustice to a meritorious claimant who had rendered full service and given full value for what she claims, and that this was the feeling of the court below is shown by the fact that the exceptions were sustained unanimously: Bugh's Est., 9 Pa. Dist. Rep. 276; Smith v. Milligan, 43 Pa. 107; Curry v. Curry, 114 Pa. 367; Kidder v. Boom Co., 24 Pa. 193.

It is immaterial whether appellee expected to be paid by decedent during her lifetime or whether she expected the compensation to take the form of a legacy: Cottrell's Appeal, 4 W. N. C. 237; Harper's Est., 196 Pa. 137; Thompson v. Stevens, 71 Pa. 161; Roberts v. Swift, 1 Yeates, 209; Harrington v. Hickman, 148 Pa. 401.

An examination of the Pennsylvania cases shows that the

presumption of periodical payments of servants' wages is applied only to the case of domestic or menial servants: Ranninger's App., 118 Pa. 20; Winings v. Hearst, 17 Pa. Superior Ct. 314; Lewis's Est., 156 Pa. 337; Bugh's Est., 9 Pa. Dist. Rep. 276; Schrader v. Beatty, 206 Pa. 184; Ewing's Est., 18 Lancaster Law Rev. 73.

And even were there any presumption of payment in the case at bar, it is at best only a presumption of fact, which is rebutted by the decedent's declarations of obligation and intention to pay: Harrington v. Hickman, 148 Pa. 401.

And it is not necessary that decedent's declarations or admissions should have been communicated to the claimant: Gordner v. Heffley, 49 Pa. 163; Sourwine v. Claypool, 138 Pa. 126; Gerz v. Demarra, 162 Pa. 530; Rhoades's Est., 13 Pa. Dist. Rep. 287; Beam's Est., 21 Lancaster Law Rev. 254; Campbell's Est., 49 Pitts. Leg. Journ. 409.

OPINION BY MR. JUSTICE MESTREZAT, April 19, 1909:

This is a claim by Mrs. Sarah J. McEvoy on a quantum meruit for the board and nursing of Miss Laura E. Cummiskey, the decedent, for 164 weeks, from October 9, 1903, to November 24, 1906, at the rate of $10.00 a week. The claimant admits a credit of $42.00 paid her in 1906, leaving a balance of $1,598 payable out of the decedent's estate.

Laura E. Cummiskey died on November 24, 1906, intestate, unmarried, without issue and leaving certain next of kin to survive her. It appeared from the evidence that the decedent had lived at the home of Mrs. McEvoy for about three years immediately prior to her death. She had her room and took her meals with Mrs. McEvoy's family, which consisted of her husband and herself. When the decedent was sick Mrs. McEvoy gave her the attention required by an ailing person. There was no contract or agreement between the decedent and Mrs. McEvoy by which the latter was to be paid for board and nursing. One witness testified that on a certain occasion the decedent had said to him: "I will give it [the place she lived on] to Mrs. McEvoy for what she has done for me, and that will hardly pay her." Another witness testified that she knew and

called on Miss Cummiskey; that the latter told her she expected to end her days with Mrs. McEvoy; "she never spoke of paying, she always spoke in a roundabout way of rewarding Sarah [Mrs. McEvoy] ultimately."

The decedent left a personal estate of $13,000, and only a small debt due the attending physician. She owned certain real estate, and received an income on mortgages aggregating $8,000 which formed part of her estate.

The claimant was formerly Miss McGinnis and for many years prior to her marriage was the servant of the decedent. After she was married, she and her husband removed to the suburbs of West Philadelphia where the boarding and nursing for which this claim is presented were furnished the decedent. Mr. McEvoy kept a small cigar store on the first floor of his residence.

The auditing judge disallowed the claim, holding that there was no competent evidence as to the value of the board or any evidence to rebut the presumption that it was paid at periodic intervals. The judge also held that the time for which the services for nursing was claimed was not accurately fixed and that the declarations of the decedent, testified to by the witnesses above referred to, were not sufficiently connected with the claim for board and nursing to warrant the conclusion that they were meant to cover a debt incurred.

The court in banc reversed the auditing judge and allowed the claim, holding that there was sufficient evidence to rebut the presumption of payment. The administrator has taken this appeal.

It is a well-established rule that the wages for domestic service are presumed to be paid at stated periods, and that when a claim for such service is presented against a decedent's estate, extending over any great length of time, the burden is upon the claimant to rebut the presumption. It, of course, is a presumption of fact which may be rebutted by competent evidence, but until satisfactory evidence is produced the presumption prevails and the claim must be disallowed. The same rule is applicable in cases of boarding and nursing under circumstances such as are disclosed in this case. It is the

habit and usage of people to pay their board bills as well as for services for nursing at stated periods. This is so well understood in this country that, as in the case of servants' wages, a presumption arises that they are periodically paid. Especially does this rule obtain where a claim for boarding and nursing for years is presented against the estate of a decedent. The protection of the estates of the dead requires its rigid enforcement. The custom of paying for such service periodically being so well known, it is no hardship upon the party who renders the service but presents no claim for it until after the lapse of years and after the party to whom the service is rendered is dead to require the claimant to produce satisfactory evidence that the usage or custom was not followed and that the claim has not been paid.

Conceding that the decedent lived with Mrs. McEvoy during the time alleged, there was no evidence to warrant the court in finding that the claimant had not received compensation. It is not pretended that there was any express contract imposing an obligation upon Miss Cummiskey to pay for the services rendered. The declarations of the decedent established no such contract nor do they show an intention to pay for the boarding and nursing. As suggested by the auditing judge, they show nothing beyond a grateful appreciation of kindness shown by Mrs. McEvoy to the decedent. The simple anticipation by the claimant of receiving a legacy without more is not sufficient to impose liability for such services rendered a decedent. There is no evidence that the decedent ever promised Mrs. McEvoy to compensate her by a legacy.

So far as the evidence discloses there was no demand made by Mrs. McEvoy of Miss Cummiskey for payment for any services rendered. For more than three years, as alleged by the claimant, these services were continuously rendered. No suggestion comes from Miss Cummiskey that she intended to pay and no demand is made by the claimant. In the absence of evidence of these facts, there is a presumption that the services were paid for at stated periods customary in the neighborhood. This presumption is strengthened when it is recalled that the decedent asked for and paid her physician's

bills promptly; that she had ample means which were available to pay for the services as they were rendered; and that the apparent financial condition of the claimant and her husband, as disclosed by the evidence, was not such as to justify the belief that payment for the services would have been permitted to extend beyond the customary period for settling such claims. There is no direct evidence that Miss Cummiskey did not pay for the services rendered, nor are there any facts disclosed by the testimony which would warrant the finding that the usual rule of periodic payments was not observed in this case. The decedent had available means to meet obligations of this character as they matured, and the financial condition of the claimant does not show that payment would not have been accepted or that it was not needed at the times compensation for such services are usually and ordinarily paid. Why a party of ample means should for more than three years board with and be nursed by a former servant with limited means without paying or having any demand made upon her for payment of a sum aggregating $520 per year due for such service seems incredible; and before such claim is awarded out of a decedent's estate satisfactory evidence of nonpayment should be produced. We find no such evidence in this case, and consequently we are required to sustain the auditing judge in disallowing Mrs. McEvoy's claim.

The assignments of error are sustained, and the decree of the orphans' court is reversed.